JAY R. HENNEBERRY (State Bar No. 135065)
jhenneberry@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, California 90071
Telephone: (213) 892-1000
Facsimile: (213) 892-2045

SCOTT S. BALBER
sbalber@chadbourne.com
JONATHAN C. CROSS
jcross@chadbourne.com
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-9865

Attorneys for Plaintiff LFG National Capital, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LFG NATIONAL CAPITAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, P.L., WILLIE GARY, and LORENZO WILLIAMS,<br><br>Defendants. | No: CV11-04538 PSG (PJWx)<br><br>**DECLARATION OF ALAN L. ZIMMERMAN IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE: ISSUANCE OF A PRELIMINARY INJUNCTION**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Ctrm:** Roybal 880 (Hon. Philip Gutierrez)<br><br>**Action Filed:** May 26, 2011 |

## DECLARATION OF ALAN L. ZIMMERMAN

I, Alan L. Zimmerman, declare as follows:

1. I am the Chief Executive Officer of LFG Servicing, LLC, the loan servicing agent authorized to act on behalf of Plaintiff LFG National Capital, LLC ("LFG National"). I make this declaration based on personal, firsthand knowledge of the facts stated and, if called upon to do so, I could and would competently testify thereto.

2. On March 19, 2007, defendant Gary, Williams, Finney, Lewis, Watson & Sperando, P.L. ("Gary, Williams") entered into a Cost Loan and Security Agreement (the "Loan Agreement") with LawFinance Group, Inc., then an affiliate of LFG National. A true and correct copy of the Loan Agreement, along with all amendments thereto, is attached as Exhibit A hereto.

3. This action has proved necessary because Gary, Williams, a prominent Florida law firm, has persistently and willfully breached its obligations under the Loan Agreement and is now indebted to LFG National for nearly $10.2 million. Rather than repay its debts, Gary, Williams has engaged in conduct that evidences nothing short of a blatant disregard for its payment and covenant obligations, such as misrepresenting the uses of loan proceeds and the amount of collateral, and acting to dissipate LFG National's collateral in ways that place LFG National at risk of being unable to collect a judgment for the amounts due under the Loan Agreement. This behavior, which includes actions such as providing detail of check registers to LFG National to prove payment to vendors, then stockpiling the checks in an office drawer rather than sending them anywhere, demonstrates that Gary, Williams is intent on deceiving LFG National and concealing the true extent of the dissipation of LFG National's collateral.

4. By means of an Assignment Certificate dated March 22, 2007, LawFinance Group, Inc. assigned and sold to LFG National all of LawFinance Group, Inc.'s right and interest under the Loan Agreement. A true and correct copy of the Assignment Certificate is attached as Exhibit B hereto. Pursuant to the Management

and Servicing Agreement, as amended and restated, originally dated as of March 31, 2004, LFG Servicing has full rights to service the loan evidenced by the Loan Agreement, including the power to act, on behalf of LFG National, to collect the sums owed thereunder.

5. The Loan Agreement replaced, and provided funds to refinance the amounts due under, an earlier, similar loan agreement between Gary, Williams and LawFinance Group, Inc., dated May 18, 2005.

6. Section 1.2.15 of the Loan Agreement defines the "Collateral" as "[a]ll [Gary, Williams'] present and future Accounts, Chattel Paper, Goods (including Inventory and Equipment), Instruments, Investment Property, Documents, and General Intangibles, including all of [Gary, Williams'] rights to attorneys fees and costs generated from all legal activity of [Gary, Williams], including without limitation, attorneys fees and costs generated from the Cases, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts, and the proceeds thereof."

7. LFG National holds liens over substantially all of Gary, Williams' property and assets, pursuant to the Loan Agreement, having perfected its liens as of June 8, 2005 and March 22, 2007 through the filing of Florida Uniform Commercial Code Financing Statements (with a subsequent continuation filed on June 8, 2010). True and correct copies of the Florida Uniform Commercial Code Financing Statements filed on June 8, 2005 and March 22, 2007 are attached as Exhibit C hereto, and a true and correct copy of the continuation that was filed on June 8, 2010 is attached as Exhibit D hereto.

8. Pursuant to Exhibit 2.1.1 of the Loan Agreement, to request an advance of funds, Gary, Williams is required to provide LFG National "with a report at the time of requesting an Advance that indicates all Case Costs advanced by [Gary, Williams] that are to be the basis, among others, for [LFG National] to make advances." Such a report must include information regarding the type of cost disbursement, the vendor payee, the amount of the disbursement, and the check number. In other words, under

the Loan Agreement, Gary, Williams may seek an advance of funds only against "Case Costs" actually paid.

9.  On March 19, 2007, Willie Gary executed a Guaranty (the "Willie Gary Guaranty"), whereby he "unconditionally and irrevocably guarantee[d]" the "prompt payment and performance" of all present and future obligations of Gary, Williams under the Loan Agreement. A true and correct copy of the Willie Gary Guaranty is attached as Exhibit E hereto.

10. On March 19, 2007, Lorenzo Williams executed a Guaranty (the "Lorenzo Williams Guaranty," collectively along with the Willie Gary Guaranty, the "Guarantees"), whereby he "unconditionally and irrevocably guarantee[d]" the "prompt payment and performance" of all present and future obligations of Gary, Williams under the Loan Agreement. A true and correct copy of the Lorenzo Williams Guaranty is attached as Exhibit F hereto.

11. Under the respective terms of the Guarantees, no payment "of any kind whatsoever" with respect to any sums owed to Willie Gary or to Lorenzo Williams by Gary, Williams shall be made until all obligations of Gary, Williams to LFG National under the Loan Agreement have been paid in full, and if sums are paid to either individual before that time, such sums shall "be held by [the guarantor] as trustee for [LFG National]."

12. By letters dated January 11, 2011, LFG National provided Willie Gary and Lorenzo Williams with written notice that all obligations under the Loan Agreement were due and payable immediately and that LFG National was thereby exercising its rights and demanding immediate payment under the Guarantees. True and correct copies of the January 11, 2011 letters are attached hereto as Exhibit G.

13. Gary, Williams has been in continuous default of its obligations under the Loan Agreement since at least July 16, 2009, when Gary, Williams failed to remit a required interest payment. Gary, Williams also failed to remit required interest and principal payments on at least 19 other occasions. True and correct copies of LFG

4

DECLARATION OF ALAN L. ZIMMERMAN IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE: ISSUANCE OF A PRELIMINARY INJUNCTION
CPAM: 3996386v3

National's letters to Gary, Williams concerning these payment defaults are attached as Exhibit H hereto.

14. Each of these payment defaults represented an Event of Default under Section 11.1 of the Loan Agreement. Pursuant to Section 12.1.2 of the Loan Agreement, each such Event of Default authorized LFG National to declare all of Gary, Williams' obligations under the Loan Agreement immediately due and payable. Accordingly, on July 1, 2010, LFG National served written notice upon Gary, Williams that all such obligations were immediately due and payable. A true and correct copy of the July 1, 2010 notice, along with a subsequent notice sent on July 23, 2010, is attached as Exhibit I hereto. In the time since, LFG National has attempted to work with Gary, Williams to resolve the outstanding debt but has met with little success.

15. In addition, under Section 2.2.2.1 of the Loan Agreement, if Gary, Williams recovers funds representing "Case Costs" in its pending cases, Gary, Williams is required to pay the full amount of such funds to LFG National within 10 days of the end of the calendar month in which the funds are received.

16. Gary, Williams has failed to remit the full amount of Case Costs received on numerous occasions, including on October 15, 2008; September 1, 2009; November 18, 2009; and March 10, 2011. Each of these failures to remit Case Costs constituted an Event of Default under the Loan Agreement. True and correct copies of LFG National's letters to Gary, Williams concerning these defaults are attached as Exhibit J hereto.

17. In a signed Amendment to the Loan Agreement executed on May 29, 2009, attached to Exhibit A hereto, Gary, Williams acknowledged that Events of Default had occurred because Gary, Williams had failed to make mandatory loan payments upon receipt of Case Costs and had failed to timely make certain other payments under the Loan Agreement. While LFG National conditionally agreed to waive the defaults existing before May 29, 2009, the waiver was expressly made

5

DECLARATION OF ALAN L. ZIMMERMAN IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE: ISSUANCE OF A PRELIMINARY INJUNCTION
CPAM: 3996386v3

"subject to Borrower's compliance with the terms and conditions below," including Gary, Williams' compliance with its obligation to forward the full amount of Case Costs received, and otherwise to comply prospectively with its obligations under the Loan Agreement, as amended.

18. As of June 3, 2011, the sum of $10,191,135.86 has not been paid and is due and owing by Gary, Williams under the Loan Agreement.

19. Under Section 10.3 of the Loan Agreement, Gary, Williams is prohibited from engaging in any transfer of its assets not in the ordinary course of business in an amount greater than $25,000.

20. Under Section 9.1 of the Loan Agreement, Gary, Williams is required to provide to LFG National truthful and accurate reports concerning, among other things, Gary, Williams' financial condition. This information has proven inaccurate on many occasions, and on other occasions, has revealed serious breaches of the Loan Agreement.

21. For example, the financial records provided by Gary, Williams have revealed large movements of money from the Firm to its principals, Willie Gary and Lorenzo Williams. A true and correct copy of a Borrower Disbursement Analysis showing certain payments made by Gary, Williams between January 1, 2010 and May 16, 2011 is attached as Exhibit K hereto.

22. The Borrower Disbursement Sample shows that over this 17-month period, Gary, Williams transferred $2,306,760.98 to Willie Gary and $1,475,750.00 to Lorenzo Williams. Thus, it appears that millions of dollars of the collateral securing the obligations under the Loan Agreement have been transferred to Willie Gary and Lorenzo Williams.

23. These transfers appear to violate both Section 10.3 of the Loan Agreement and the terms of the Guarantees, which prohibit Willie Gary and Lorenzo Williams from receiving any payment on account of an obligation owed to them by Gary, Williams, and require them to hold any such payments as trustees on behalf of LFG

National as beneficiary, for as long as an amount remains outstanding under the Loan Agreement.

24. Moreover, LFG National has no knowledge of the current location of these funds which represent collateral under the Loan Agreement and which appear to have been transferred from the Gary, Williams firm for the benefit of its principals. Nor have Willie Gary or Lorenzo Williams given any indication that they are holding these funds in a separate trust account for LFG National's benefit, as required under the terms of the Guarantees.

25. These wrongful transfers to Willie Gary and Lorenzo Williams have continued in recent months, leading LFG National to believe that Gary, Williams may be engaged in ongoing efforts to transfer funds from the bank accounts of Gary, Williams in order to frustrate and complicate enforcement of a judgment in this action. For example, in late February, as reflected in the transaction records attached to Exhibit K hereto, Gary, Williams made transfers of $100,000 to Willie Gary and $50,000 to Lorenzo Williams, respectively.

26. Moreover, funds representing collateral securing LFG National's loans, which Gary, Williams was required to pay LFG National under the Loan Agreement, has repeatedly vanished without satisfactory explanation. For example, on [Material Redacted], 2011, Gary, Williams received a payment of fees and Case Costs in a particular case -- [Material Redacted] -- of which $618,692.00 represented Case Costs which must be paid in full to LFG National, and an addition sum of $204,936.60 represented fees required to be paid to LFG National, for a total mandatory payment of $823,628.60. Gary, Williams did not pay this sum, but instead paid $399,196.94, offering a spurious explanation as to why the additional amounts were not remitted to LFG National as required: that it is not required to pay LFG National all Case Costs it receives if it has not paid its vendors for Costs incurred in connection with that Case. This is a direct repudiation of Gary, Williams' obligations under the Loan Agreement

and an acknowledgement that funds drawn down to pay Case Costs in the [Material Redacted] case were improperly applied to other purposes.

27. The most recent Case Costs report provided by Gary, Williams reveals that the net amount of Case Costs is $6,805,950.06, or approximately $3.4 million less than the current loan balance of nearly $10.2 million. A true and correct copy of LFG National's summary of this Case Costs report is attached as Exhibit L hereto.

28. While future receipts of legal fees may generate additional collateral, for at least the past six months, Gary, Williams has not complied with its obligation under the Loan Agreement to provide estimates of its recoverable legal fees. Moreover, as of May 17, 2011, Gary, Williams has stopped providing current financial information as required under the Loan Agreement. Accordingly, at present it is not clear that sufficient collateral exists to secure Gary, Williams' obligations under the Loan Agreement.

29. In addition to the financial reports which Gary, Williams is required to provide under the Loan Agreement, Gary, Williams is required, under Exhibit 4.1.5 and Section 11.5 of the Loan Agreement, to provide to LFG National prompt access to its premises and financial records on demand for audit purposes.

30. Past audits of Gary, Williams' financial and collateral records have revealed deliberate and material concealment of the firm's financial condition. For example, audits performed by LFG National have demonstrated that Gary, Williams has reported hundreds of thousands of dollars of Case Costs -- which under the Loan Agreement must be paid by Gary, Williams to form the basis for borrowing requests -- based upon scores of checks that were written by Gary, Williams, but retained in a desk drawer rather than being utilized to pay the vendors who billed Gary, Williams for the purported Case Costs. Thus, Gary, Williams has repeatedly misrepresented the amount of its Case Costs to LFG National.

31. Recently, Gary, Williams has refused to provide access to its records and premises to LFG National for auditing purposes. On or about May 18, 2011, I advised

8

DECLARATION OF ALAN L. ZIMMERMAN IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE: ISSUANCE OF A PRELIMINARY INJUNCTION
CPAM: 3996386v3

Willie Gary of our intention to conduct an audit commencing on May 23, 2011. On or about May 19, 2011, I reiterated to Willie Gary in a telephone conversation LFG Servicing's intention to conduct an audit commencing May 23, 2011. On May 20, 2011, I notified Chan Bryant Abney, Esq., the General Counsel of Gary, Williams that LFG National would be sending an employee to Florida promptly to conduct an audit. A true and correct copy of my e-mail is attached hereto as Exhibit M.

32.    On May 22, 2011, Ms. Abney replied by e-mail that "we will not agree to allow an employee from the LFG on the Firm's premises for an audit." A true and correct copy of Ms. Abney's May 22, 2011 e-mail is attached as Exhibit N hereto.

33.    At 9:00 a.m. on May 23, 2011, Katie Silvestri, LFG Servicing's designated auditor, appeared at the Stuart, Florida office of Gary, Williams to conduct an audit pursuant to Exhibit 4.1.5 and Section 11.5 of the Loan Agreement and the prior notice to Gary, Williams. She signed in with the receptionist and was advised that Ms. Abney had cancelled the audit. Ms. Silvestri remained in Stuart, Florida for 5 days awaiting access to the Gary, Williams' offices to conduct an audit but was denied such access during that time.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 3, 2011 at San Rafael, California.

_____
Alan L. Zimmerman