JAY R. HENNEBERRY (State Bar No. 135065)
jhenneberry@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, California 90071
Telephone: (213) 892-1000
Facsimile: (213) 892-2045

*Of Counsel*
Scott S. Balber
sbalber@chadbourne.com
Jonathan C. Cross
jcross@chadbourne.com
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

Attorneys for Plaintiff and Counterdefendants
LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., and
LFG SERVICING, LLC

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071 (213) 892-1000

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LFG NATIONAL CAPITAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, P.L., WILLIE GARY, and LORENZO WILLIAMS,<br><br>Defendants.<br><br>———————————————<br><br>GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, P.L.,<br><br>Counterclaimant,<br><br>v.<br><br>LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., and LFG SERVICING, LLC<br><br>Counterdefendants. | Case No. CV11-04538 PSG (PJWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERDEFENDANTS LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., AND LFG SERVICING, LLC'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**[REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF BEING FILED CONCURRENTLY]**<br><br>Hearing Date: September 12, 2011<br>Time: 1:30 p.m.<br>Judge: Honorable Philip S. Gutierrez<br>Courtroom: 880 |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| PRELIMINARY STATEMENT | | | 1 |
| COUNTERCLAIM ALLEGATIONS | | | 2 |
| ARGUMENT | | | 5 |
| I. | THE FIRM'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6) | | 5 |
| | A. | Standard to Dismiss Claims Pursuant to Fed. R. Civ. P. 12(b)(6) | 5 |
| | B. | The Firm's Claim of Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed | 6 |
| | | 1. The Firm's Allegations in Support of Its Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Are Contradictory and Wildly Implausible | 8 |
| | C. | The Firm's Claim of Interference with Contractual Relations Should Be Dismissed | 9 |
| | D. | The Firm's Claim of a Violation of Florida Usury Law Should Be Dismissed | 10 |
| | | 1. The Loan Agreement Is Not Usurious Under Florida Law | 10 |
| | | 2. Florida Usury Law Is Not Applicable Because the Loan Was Made in California | 10 |
| | E. | The Firm's Claim of a Violation of California Usury Law Should Be Dismissed | 11 |
| | | 1. Amendment No. 3 to the Loan Agreement Benefitted the Firm | 11 |
| | | 2. A Loan Cannot Become Usurious Through Subsequent Amendment in Response to a Borrower Default | 12 |
| | F. | The Firm's Claim of Unfair Business Practices Should Be Dismissed | 14 |
| CONCLUSION | | | 18 |

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

MEM. OF P. & A. IN SUPP. OF MOT. TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CPAM: 4070305.21

# <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

CASES

AccuImage Diagnostics Corp. v. Terarecon, Inc.,
   260 F. Supp. 2d 941 (N.D. Cal. 2003)..................................................................10

Aquino v. Credit Control Servs.,
   4 F. Supp. 2d 927 (N.D. Cal. 1998)....................................................................15

Ashcroft v. Iqbal,
   556 U.S ___, 129 S. Ct 1937, 173 L.Ed. 2d 868 (2009) .................................5, 8

Balistreri v. Pacifica Police Dep't,
   901 F.2d 696 (9th Cir. 1990)................................................................................5

Barron v. Reich,
   13 F.3d 1370 (9th Cir. 1994)..........................................................................6, 12

Bobby D Assocs. v. McDonald,
   2004 WL 831179 (Cal. App. Apr. 19, 2004)...............................................13, 14

Brocato v. Dep't of Corrections,
   2009 WL 3489367 (C.D. Cal. Oct. 26, 2009)..................................................5, 6

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
   35 Cal. 3d 197, 673 P.2d 660 (1983)............................................................15, 16

Computer Place, Inc. v. Hewlett-Packard Co.,
   607 F. Supp. 822 (N.D. Cal. 1984).......................................................................9

DCM Partners v. Smith,
   228 Cal. App. 3d 729, 278 Cal. Rptr. 778 (1991)...............................................14

Farmers Ins. Exch. v. Super. Ct.,
   2 Cal. 4th 377, 826 P.2d 730 (1992)...................................................................15

Holden v. Hagopian,
   978 F.2d 1115 (9th Cir. 1992)...............................................................................5

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071  (213) 892-1000

MEM. OF P. & A. IN SUPP. OF MOT. TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CPAM: 4070305.21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071 (213) 892-1000

# <u>TABLE OF AUTHORITIES</u>
*(continued)*

**Page(s)**

CASES

<u>Lee</u> v. <u>City of Los Angeles</u>,
    250 F.3d 668 (9th Cir. 2001)................................................................6

<u>Miller</u> v. <u>Tiffany</u>,
    68 U.S. 298, 17 L. Ed. 540 (1863) ...................................................11

<u>Motors, Inc.</u> v. <u>Times Mirror Co.</u>,
    102 Cal. App. 3d 735, 162 Cal. Rptr. 543 (1980)...........................15

<u>Oregrund Ltd. P'ship</u> v. <u>Sheive</u>,
    873 So. 2d 451 (Fla. Dist. Ct. App. 2004) ......................................10

<u>People</u> v. <u>McKale</u>,
    25 Cal. 3d 626, 602 P.2d 731 (1979)...............................................15

<u>Podolsky</u> v. <u>First Healthcare Corp.</u>,
    50 Cal. App. 4th 632, 58 Cal. Rptr. 2d 89 (1996)..................... 14, 17

<u>Price</u> v. <u>Wells Fargo Bank</u>,
    213 Cal. App. 3d 465, 261 Cal. Rptr. 735 (1989)..............................7

<u>Seth Dallob Enters</u>. v. <u>Pomona Unified School Dist.</u>,
    2008 WL 2807230 (Cal. App. July 22, 2008)....................................7

<u>Shaklee U.S. Inc</u>. v. <u>Giddens</u>,
    1991 WL 90003 (9th Cir. 1991)........................................................9

<u>Sw. Concrete Prods</u>. v. <u>Gosh Constr. Corp.</u>,
    51 Cal. 3d 701, 798 P.2d 1247 (1990)........................................13, 14

<u>Stockman</u> v. <u>Hart Brewing, Inc.</u>,
    143 F.3d 1293 (9th Cir. 1998).......................................................6, 7

<u>Strike</u> v. <u>Trans-West Disc. Corp.</u>,
    92 Cal. App. 3d 735, 155 Cal. Rptr. 132 (1979)..............................13

iv

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

CASES

Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.,
609 F.3d 975 (9th Cir. 2010)...........................................................................18

Ury v. Jewelers Acceptance Corp.,
227 Cal. App. 2d 11, 38 Cal. Rptr. 376 (1964)................................................11

STATUTES

California Business & Professions Code § 17200 ......................................... 14-17

California Civil Code § 1654 ................................................................................11

California Financial Code § 22002 ......................................................................12

Fed. R. Civ. P. 12(b)(6)...................................................................................5, 18

Fed. R. Evid. 201 ...................................................................................................6

Florida Statute § 687.03(1) .................................................................................10

Florida Statute § 687.071(2) ...............................................................................10

Uniform Commercial Code § 9-406 ..............................................................1, 4, 8

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

MEM. OF P. & A. IN SUPP. OF MOT. TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CPAM: 4070305.21

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The essence of this dispute is that a large, sophisticated law firm, with its eyes wide open, borrowed approximately $10 million and refuses to repay the funds it borrowed.  Seeking to complicate and delay what should be a straightforward adjudication of its liability on the note, Defendant and Counterclaimant Gary, Williams, Finney, Lewis, Watson & Sperando, P.L. (the "Firm") now brings a range of meritless counterclaims.  Each of the counterclaims should be dismissed because they are deficiently pled and face insuperable obstacles as a matter of law.

First, the Firm's counterclaim for breach of the implied covenant of good faith and fair dealing should be dismissed because it rests on bizarre and incredible claims as to the motives of LawFinance Group, Inc. ("LawFinance"), LFG Servicing, LLC ("LFG Servicing") and LFG National Capital, LLC ("LFG National," and collectively along with LawFinance and LFG Servicing, "LFG") and wholly ignores the nature of LFG's rights as a secured creditor of the Firm.  The Firm complains that LFG sent written instructions to persons holding funds over which LFG holds valid liens, directing (as Section 9-406 of the Uniform Commercial Code expressly permits) that these persons pay funds owed to the Firm to LFG instead.  These instructions to pay funds to LFG in satisfaction of the loan to the Firm are actionable, the Firm alleges, because  LFG's "motive" was "to prevent prompt repayment" of the loan using these very same sums. The Firm's theory – that LFG directed that funds be paid to it in order to ensure that these funds would not be paid to it – fails to meet the requirement that allegations made in support of a claim must be plausible.  Moreover, through unambiguous provisions of the loan, the Firm has irrevocably waived any pursuit of counterclaims based upon LFG's exercise of its Uniform Commercial Code ("UCC") security interests.

Second, the Firm's counterclaim for interference with contractual relations should be dismissed, because the Firm cannot, and does not, explain why LFG's exercise of its rights as a secured creditor – in a manner that the Firm contractually agreed was

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

1  reasonable – constitutes a "wrongful" interference with the Firm's contracts with third

2  parties.  This counterclaim rests on the same bizarre allegation as to motive – that LFG

3  issued UCC instructions to pay money to it in order to ensure that no money would be

4  paid to it – that dooms several of the Firm's counterclaims.  Beyond this incredible

5  allegation, everything else the Firm alleges in support of this counterclaim amounts to a

6  conclusory parroting of the elements of the relevant cause of action.  Moreover, the

7  Firm fails to explain why any "interference" with the Firm's business was wrongful, as

8  opposed to being the necessary and logical consequence of the Firm's serious and

9  ongoing defaults on its secured loan obligations.

10        Third, the Firm's "usury" counterclaims fail as a matter of law.  The Firm argues

11  that the 21% default interest rate under the Loan Agreement violates Florida usury laws

12  – but the usury rate under Florida law is 25%, and in any event, Florida law does not

13  apply to the loans at issue, which are nowhere alleged to have been made in Florida.

14  Moreover, the loan, which was made by a duly licensed California finance lender, is

15  exempt from California usury law, and, as numerous California courts have confirmed,

16  neither the subsequent assignment of such a loan nor a modification of its terms to

17  relieve a borrower of the consequences of default can cause the loan to become

18  usurious.

19        Finally, the Firm's counterclaim for "unfair or deceptive business practices" fails

20  because the Firm nowhere alleges, as California law requires, that members of the

21  public are likely to be deceived by any of the alleged acts, that the alleged conduct –

22  consisting of a secured lender asserting its rights under the UCC in a manner

23  contractually agreed by the Firm to be reasonable – was "unfair," in the sense that the

24  harm caused by it outweighs any potential benefit, or that LFG engaged in behavior that

25  violated any law.

26                    **COUNTERCLAIM ALLEGATIONS**

27        In support of its counterclaims, the Firm alleges that in 2007, it entered into a

28  Cost Loan and Security Agreement (the "Loan Agreement") with Counterdefendant

2

LawFinance.  Defendant and Counterclaimant Gary, Williams, Finney, Lewis, Watson & Sperando, P.L.'s Counterclaim (the "Counterclaims") ¶ 10.  It alleges that the purpose of the loan evidenced by the Loan Agreement was to enable the Firm to finance the payment of litigation costs in its pending cases.  Counterclaims ¶ 13.  It further alleges that, on or about March 22, 2007, LawFinance assigned its rights under the Loan Agreement to LFG National, an entity that is alleged not to be a licensed California finance company.  Counterclaims ¶¶ 17, 19.

The Firm alleges that on May 29, 2009, the Firm entered into an amendment to the Loan Agreement ("Amendment No. 3"), pursuant to which the interest rate (absent a default by the Firm) was modified from a variable rate to a 16% fixed rate.  Counterclaims ¶¶ 14, 18.  Though not alleged by the Firm, the plain terms of Amendment No. 3 – a document referenced in the Counterclaims – also recite the Firm's "agree[ment] and acknowledge[ment]" that numerous Events of Default had occurred, exposing the Firm to a default Interest Rate of at least 18%  under the then-prevailing terms of the Loan Agreement.  (See Request for Judicial Notice ("RJN") Ex. A, Amendment No. 3 ("Amendment No. 3").)

While the Firm's principals are unable to point to any payments made after February 2011, more than five months ago, see Defendants Willie Gary and Lorenzo Williams' Motion to Dismiss the Second Claim for Relief in Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) at p. 5, and the Counterclaims nowhere allege that the Firm is current in its payments under the Loan Agreement, the Counterclaims inexplicably recite that "the Firm denied, and denies now, that it has breached the Agreement."  Counterclaims ¶ 22.  The Firm does not explain how it can "den[y]" any breach of the Loan Agreement while conceding that it has not made any payments thereunder for an extended period of time.  While the Counterclaims assert that the Firm has made various payments over the years under the Loan Agreement, the Counterclaims do not assert that no balance is currently past due.

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

MEM. OF P. & A. IN SUPP. OF MOT. TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CPAM: 4070305.21

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071  (213) 892-1000

The Counterclaims misleadingly recite the terms of several letters which were sent by LFG Servicing and LFG National (pursuant to Section 9-406 of the UCC) to several parties believed to hold funds that were owed to the Firm and subject to LFG's liens.  Counterclaims ¶¶ 25-27.  The letters themselves are attached to the Counterclaims and reflect that LFG wrote to three parties – i) the State of New York, which owed legal fees to the Firm with respect to a class action settlement captioned <u>Simpson</u> v. <u>State of New York</u> ("<u>Simpson</u>"), ii) the Firm's local counsel in <u>Simpson</u>, whom the court had directed should collect the Firm's fee from the State of New York and pay it to the Firm, and iii) the Firm's co-counsel in another class action case, captioned <u>Pokorny</u> v. <u>Quixtar, Inc.</u> ("<u>Quixtar</u>"), which also was in a position to receive fees from the defendants in that case and pay the Firm its share of such fees.  Counterclaims Exs. B-D.  The letters reflect that LFG asserted that it held a perfected security interest over all legal fees and costs payable to the Firm, that the Firm was in default under the Loan Agreement, that the Firm was an assignee of these funds under the terms of the Loan Agreement, and that accordingly, any legal fees and costs which the recipients intended to pay to the Firm should instead be paid to LFG as assignee.  <u>Id</u>.  The Counterclaims nowhere deny that LFG held a valid UCC security interest with respect to these funds.

The Counterclaims allege that the sending of these UCC § 9-406 demands has "seriously affected" and "possibly damaged" the Firm's relationships with its clients and co-counsel.  Counterclaims ¶ 28.  Remarkably, the Firm alleges that LFG's "motive" in demanding payment of funds in satisfaction of the Firm's obligations under the Loan Agreement was "to prevent to prompt repayment of amounts owed by the Firm [sic]."  Counterclaims ¶ 29.  The Firm theorizes a conspiracy to "sabotage the potential settlements" in the <u>Quixtar</u> and <u>Simpson</u> cases in order to prevent the Firm from paying its debts.  <u>Id</u>.  The Firm does not explain how this bizarre theory could possibly be plausible – <u>i.e.</u>, that LFG was plotting to destroy its own collateral – or why the Court should reject the more obvious and logical explanation – that LFG was simply

1  trying to collect identifiable cash collateral in satisfaction of a defaulted loan in order to

2  hasten, rather than prevent, repayment of the loan.

3

4                                   **ARGUMENT**

5                                        **I.**

6  **THE FIRM'S COUNTERCLAIMS SHOULD BE DISMISSED FOR FAILURE**

7    **TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6)**

8  **A.    Standard to Dismiss Claims Pursuant to Fed. R. Civ. P. 12(b)(6)**

9         A complaint will be dismissed under Fed. R. Civ. P. 12(b)(6) if there is a "lack of

10  a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

11  legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  To

12  survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must

13  provide "more than mere labels and conclusions, and a formulaic recitation of the

14  elements of a cause of action will not do." Brocato v. Dep't of Corrections, 2009 WL

15  3489367, at *3 (C.D. Cal. Oct. 26, 2009) (citing Bell Atlantic Corp. v. Twombly, 550

16  U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007)).  Rather, "[t]he

17  complaint must contain factual allegations sufficient to rise above the speculative level,

18  or the merely possible or conceivable." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct

19  1937, 1950, 173 L. Ed. 2d 868, 884 (2009) (noting that "[t]o survive a motion to

20  dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

21  claim to relief that is plausible on its face").  The court is not required to accept as true

22  "a legal conclusion couched as a factual allegation." Id.  Moreover, conclusory

23  allegations, unsupported by facts, are insufficient to state a claim. Holden v. Hagopian,

24  978 F.2d 1115, 1121 (9th Cir. 1992).

25         While generally the court cannot consider materials outside of the complaint in

26  determining the motion to dismiss, "[d]ocuments whose contents are alleged in a

27  complaint and whose authenticity no party questions, but which are not physically

28  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

1   dismiss." Brocato, 2009 WL 3489367, at *4 (citing In re Stac Elec. Sec. Litig., 89 F.3d

2   1399, 1405 n.4 (9th Cir. 1996)); see also Lee v. City of Los Angeles, 250 F.3d 668, 688

3   (9th Cir. 2001).  A court need not accept as true "allegations which are contradicted by

4   documents referred to in the complaint." Stockman v. Hart Brewing, Inc., 143 F.3d

5   1293, 1295-96 (9th Cir. 1998).

6        Additionally, pursuant to Fed. R. Evid. 201, the court can take judicial notice of

7   "matters of public record," Lee, 250 F.3d at 689 (citation omitted), which includes

8   "[r]ecords and reports of administrative bodies." Barron v. Reich, 13 F.3d 1370, 1377

9   (9th Cir. 1994).

10  **B.       The Firm's Claim of Breach of the Implied Covenant of Good Faith and**

11  **         Fair Dealing Should Be Dismissed**

12       Under the plain terms of the Loan Agreement, the Firm conveyed to LFG a first

13  lien security interest in substantially all of the Firm's assets, including, specifically, fees

14  the Firm was entitled to receive in each and every one of its pending cases.  See RJN

15  Ex. A, Loan Agreement ("Loan Agreement") § 5 ("Borrower hereby grants to the

16  Lender a first-priority security interest . . . in the Collateral"); § 1.2.15 (defining

17  "Collateral" as including  "All Borrower's . . . rights to attorneys fees and costs

18  generated from all legal activity of Borrower").  Not only did the Firm convey this

19  security interest, but it also agreed unequivocally, in advance, that it would "not be

20  commercially unreasonable" for LFG, in the event of a default under the Loan

21  Agreement, to exercise the full range of remedies available to LFG under the UCC.

22  Loan Agreement § 13.  Specifically, the Firm, "acknowledge[d] and agree[d] that it is

23  not commercially unreasonable" for LFG to "exercise collection remedies against

24  account debtors and other persons obligated on Collateral" (e.g., persons who owed the

25  Firm legal fees), "directly or through the use of attorneys, collection agencies and other

26  collection specialists." Id. § 13.2.  The Loan Agreement also stated that "[u]pon the

27  occurrence of any Event of Default . . . Lender may . . . [t]ake or bring . . . all steps,

28  actions, suits, or proceedings deemed by Lender necessary or desirable to effect

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

1  collection of or other realization upon any Collateral." Id. § 12.1.3.  Thus, as

2  consideration for the Loan, the Firm agreed that the precise steps LFG took – exercising

3  UCC collection remedies against account debtors who owed money to the Firm over

4  which LFG holds a lien – was *per se* commercially reasonable.  In its Counterclaims,

5  the Firm nowhere contests the validity of LFG's security interests over the assets in

6  question, nor does the Firm allege that LFG did not have the right to exercise its liens

7  over the Firm's assets.[1]

8      It follows from these plain terms of the Loan Agreement that the Firm's implied

9  covenant counterclaim fails as a matter of law.  The California Supreme Court "has

10  made clear that an implied covenant of good faith and fair dealing cannot contradict the

11  express terms of a contract." Seth Dallob Enters. v. Pomona Unified Sch. Dist., 2008

12  WL 2807230, at *5 (Cal. App. July 22, 2008) (citing Carma Developers (Cal.) Inc. v.

13  Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 374, 826 P.2d 710, 728 (1992)).  Accordingly,

14  "it has been held that the implied covenant of good faith and fair dealing does not

15  impose an affirmative duty on a party to refrain from enforcing rights expressly given

16  under the contract." Id.; see also Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 479,

17  261 Cal. Rptr. 735, 742 (1989) (rejecting argument that the implied covenant of good

18  faith and fair dealing imposes upon lenders "a duty of reasonable forbearance in

19  enforcing . . . creditor's remedies").  Because the implied covenant of good faith and

20

21  _____

22  [1] Remarkably, although the Firm has not made a payment at least in the last five months, the Firm alleges, in conclusory fashion, that it is not in default under the Loan

23  Agreement.  See Defendant's Answer to the First Claim for Relief in LFG National Capital's Complaint (the "Answer") ¶ 27.  Under the plain terms of the Loan

24  Agreement, however, monthly payments are due and the admitted failure to make any such payments for five months – even without regard to the Firm's two-year history of

25  prior payment defaults – clearly refutes any contention that the Firm is not in default.

26  Because the Firm's allegation of non-default is contradicted by the submissions of the Firm's own principals before this court and the undisputed provisions of the Loan

27  Agreement, the Court need not credit this spurious allegation.  See Stockman, 143 F.3d

28  at 1295-96.

fair dealing "does not impose any affirmative duty of moderation in the enforcement of legal rights," the Firm has not stated a claim for breach of the covenant.  Id.

### 1.    The Firm's Allegations in Support of Its Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Are Contradictory and Wildly Implausible

Apparently recognizing that an allegation that LFG sought to enforce its contractual rights as a secured lender would not suffice to ground the Firm's implied covenant claim, the Firm seeks to buttress its claim with the novel allegation that "LFG National's motives [in sending UCC § 9-406 letters to persons holding sums owed to the Firm] were . . . to declare a default under the Agreement and prevent prompt repayment of amounts owed by the Firm under the Agreement by sabotaging the potential settlements . . . in order to collect" default interest.  Counterclaims ¶ 34.  Yet, as the correspondence attached to the Counterclaims demonstrates, what LFG did was to demand payment of sums owed to the Firm, so that these sums could be applied by LFG to reduce the outstanding balance under the Loan Agreement.  See Counterclaims Ex. B at 19 ("[LFG], as assignee of the Firm, formally provides this demand . . . that all amounts to which the Firm is entitled from the Litigation shall, henceforth and forthwith, be payable directly to [LFG] as the address and account information stated below.").

The Counterclaims thus allege an absurdity: that LFG's motive, in issuing written demands for the payment of sums that would reduce the loan balance, was to "prevent repayment" of the loan using these very same sums.  In sum, the Firm alleges that LFG demanded payment of particular funds with the motive of ensuring that it would not receive those exact funds.  The Firm's allegation that LFG's demands for payment were part of a sinister conspiracy to avoid payment fails the threshold requirement of federal pleading, that allegations must be "plausible on [their] face."  Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950, 173 L. Ed. 2d at 884.

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071  (213) 892-1000

8

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071 (213) 892-1000

## C.     The Firm's Claim of Interference with Contractual Relations Should Be Dismissed

The Firm's claim for intentional interference with contractual relations fails to state a claim for substantially the same reasons that render infirm the claim for breach of the implied covenant of good faith and fair dealing.  Substantially the same conduct is alleged in support of both claims.  <u>Compare</u> Counterclaims ¶¶ 32-37 <u>with</u> <u>id</u>. ¶¶ 38-47 (alleging that LFG wrongfully sent letters to persons who owed the Firm money, directing payment of these funds to LFG).  The same implausible motive – to prevent payment to LFG of the sums LFG was demanding be paid to it – forms the essential core of both claims.  <u>Compare</u> <u>id</u>. ¶ 34 <u>with</u> <u>id</u>. ¶ 42.  Tellingly, the Firm nowhere alleges that any contracts between the Firm and any third parties have been terminated or breached as a result of the actions complained of.

Because the conduct alleged is, as explained above, clearly permitted under the terms of the Loan Agreement, it cannot form the basis for a claim for interference with contractual relations.  It is well-established in California that "the exercise of contractual rights cannot be the basis for a claim of tortious interference." <u>Computer Place, Inc.</u> v. <u>Hewlett-Packard Co.</u>, 607 F. Supp. 822, 835 (N.D. Cal. 1984); <u>see</u> <u>also</u> <u>Shaklee U.S. Inc.</u> v. <u>Giddens</u>, No. 90-15498, 1991 WL 90003, at *3 (9th Cir. 1991) (rejecting counterclaim for interference with contractual relations where counterclaimant was unable to show that plaintiff was doing "anything other than enforcing its contractual right").  The Firm's claim for interference with contractual relations should be dismissed for this reason alone.

Moreover, the Firm fails to plead that any contractual relations were, in fact, damaged, alleging in vague terms only that LFG's acts "may have jeopardized the potential recovery of the Firm" and may have, in unspecified ways, "ma[de] it more difficult and expensive" for the Firm "to perform its obligations" to clients and co-counsel.  The first allegation is hypothetical, and the second merely parrots the language of the elements of an intentional interference cause of action; accordingly, neither

1   allegation should be credited on a motion to dismiss.  See, e.g., AccuImage Diagnostics

2   Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003) (granting motion to

3   dismiss where plaintiff relied on the conclusory allegation "that valid 'contracts' exist

4   between itself and an unspecified third party").

5   **D.      The Firm's Claim of a Violation of Florida Usury Law Should Be Dismissed**

6          **1.      The Loan Agreement Is Not Usurious Under Florida Law**

7          Defendants cannot state a claim under Florida usury law because the interest rate

8   under the Loan Agreement was at all times below the applicable Florida usury

9   threshold.  Florida Statute § 687.03(1) states that "if any loan, advance of money, line

10  of credit, forbearance to enforce the collection of a debt, or obligation exceeds $500,000

11  in amount or value, it shall not be usury or unlawful to reserve, charge, or take interest

12  thereon unless the rate of interest exceeds the rate prescribed in s. 687.071."   Florida

13  Statute § 687.071(2) provides for liability only where the interest rate is in excess of

14  25%.  Because the Firm admits in the Counterclaims that the loan was in excess of

15  $500,000, and the rate was only 21% per annum, LFG National did not violate Florida

16  usury law.  See Fla. Stat. §§ 687.03(1), 687.071(2); Oregrund Ltd. P'ship v. Sheive, 873

17  So. 2d 451, 456 (Fla. Dist. Ct. App. 2004) (holding that the "usury" threshold under

18  Florida law for loans exceeding $500,000 in value is 25% per annum).

19         **2.      Florida Usury Law Is Not Applicable Because the Loan Was Made in**

20                 **California**

21         Florida usury law is, in any event, simply not applicable to the Firm's claims.

22  The Loan Agreement was "made" in California because, as recited in the preamble to

23  the Loan Agreement, it was entered into in San Francisco, California.  Moreover,

24  pursuant to the plain language of the Loan Agreement, California law is the applicable

25  law.  Section 22 of the Loan Agreement, entitled "Governing Law," unequivocally

26  states that "[t]his agreement and all transactions contemplated herein and/or evidenced

27  hereby shall be governed by, construed under, and enforced in accordance with the

28  internal laws of the Chosen State. The parties waive the provisions of California Civil

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

MEM. OF P. & A. IN SUPP. OF MOT. TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CPAM: 4070305.21

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071 (213) 892-1000

1  Code § 1654 to the extent permitted by the applicable law." See Loan Agreement § 22.

2  Pursuant to Section 1.2.12 of the Loan Agreement, the "Chosen State" is California.

3  See Loan Agreement § 1.2.12.

4      A determination of whether a contract is usurious is determined by the choice of

5  law applicable to the contract. Miller v. Tiffany, 68 U.S. 298, 309, 17 L.Ed. 540

6  (1863). In Ury v. Jewelers Acceptance Corp., 227 Cal. App. 2d 11, 21-22, 38 Cal. Rptr.

7  376, 383 (1964), for example, the court applied New York rather than California usury

8  law on a loan agreement between a New York lender and a California borrower. The

9  court in Ury found that the contract was "made" in New York because "[i]t was in

10 [New York] that the last act necessary to the contract, the acceptance, was performed,

11 and this is regarded the place of making the contract." Id. at 16 (citation omitted).

12 Accordingly, Florida usury principles are inapplicable to the Loan Agreement.

13 **E.    The Firm's Claim of a Violation of California Usury Law Should Be**

14    **Dismissed**

15      The Firm's theory that California usury laws were violated by a 2007 amendment

16 to the Loan Agreement rests upon reasoning that has repeatedly been rejected by

17 California courts. Contrary to the Firm's contentions, a loan that is not usurious when

18 made because it is made by a California duly licensed finance lender remains exempt

19 from California usury laws notwithstanding that it may subsequently be amended by

20 agreement between the borrower and an assignee of the original, duly licensed finance

21 lender.

22      **1.    Amendment No. 3 to the Loan Agreement Benefitted the Firm**

23      The Firm makes no allegation that the Loan Agreement violated California usury

24 laws when made. Indeed, because the original lender, LawFinance, was a California

25 duly licensed finance lender,[2] it is indisputable that the Loan Agreement was exempt

26

27  _____

28  [2] It is a matter of public record that LawFinance is a California duly licensed finance lender. See RJN Ex. B. The Court may consider the public records of regulatory

11

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071 (213) 892-1000

1  from California usury laws when made pursuant to § 22002 of the California Financial

2  Code.  The Firm's theory is apparently that the Loan Agreement became usurious

3  through Amendment No. 3, agreed between the Firm and LFG National following the

4  assignment of the Loan Agreement to LFG National by LawFinance.  <u>See</u> Amendment

5  No. 3.

6       Amendment No. 3 recited the Firm's agreement and acknowledgement that "an

7  Event of Default has occurred and is continuing under Section 11 of the Agreement"

8  because the Firm had failed to make numerous required payments.  <u>Id</u>. § 1.  LFG

9  National agreed to waive these acknowledged defaults – which exposed the Firm to a

10  default interest rate of at least 18% under the original, and continuing, terms of the Loan

11  Agreement – and the parties agreed, in consideration for this waiver, to alter the non-

12  default interest rate to a fixed rate of 16%, with an option to reduce the rate to 13% if

13  the Firm paid the loan in full before the end of 2009.  <u>Id</u>. §§ 1.2.16, 2.

14       Prior to the execution of Amendment No. 3, the non-default interest rate was 13%

15  plus an "index" rate determined by reference to the three-month London interbank rate

16  ("three-month LIBOR").  <u>See</u> Loan Agreement § 1.2.22.  If the three-month LIBOR

17  rate were to rise above 3%, therefore, the rate pursuant to Amendment No. 3 would be

18  *lower* than the rate to which the parties originally agreed.  In any event, by waiving the

19  Firm's acknowledged Events of Default, the execution of Amendment No. 3 *lowered*

20  the interest rate the Firm was obligated to pay from the default interest rate of at least

21  18% to a fixed rate of 16%.

22  **2.  A Loan Cannot Become Usurious Through Subsequent Amendment in**

23  **Response to a Borrower Default**

24       The Firm's California usury claim fails because California courts have held that a

25  loan that is made by a party exempt from the usury laws does not become usurious

26  when a subsequent assignee of the lender reaches an agreement with the borrower to

27

28  agencies in adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  <u>Barron</u>,13 F.3d at 1377.

MEM. OF P. & A. IN SUPP. OF MOT. TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)

CPAM: 4070305.21

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

modify the interest rate or other terms of the loan in response to a default by the borrower.  It is well-established that a loan that is not usurious at its inception cannot be rendered usurious through subsequent events.  <u>Strike</u> v. <u>Trans-West Disc. Corp.</u>, 92 Cal. App. 3d 735, 745, 155 Cal. Rptr. 132, 139 (1979).  Moreover, "a debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract." <u>Sw. Concrete Prods.</u> v. <u>Gosh Constr. Corp.</u>, 51 Cal. 3d 701, 706, 798 P.2d 1247, 1250 (1990).  Rather, "where the excessive interest is caused by a contingency under the debtor's control, the transaction will not be deemed usurious." <u>Id</u>.

 <u>Bobby D Assocs.</u> v. <u>McDonald</u>, 2004 WL 831179 (Cal. App. Apr. 19, 2004), is instructive.  In that case, as here, a borrower initially entered into a loan agreement with an entity – a bank – exempt from California usury laws. <u>Id</u>. at *1.  Just as here, the loan was then assigned to a non-exempt entity, the borrower subsequently defaulted, and the borrower and the non-exempt assignee agreed to replace the original, variable interest rate with a fixed rate that, absent an exemption, would be in excess of the California usury rate. <u>Id</u>. at *1, 3.  As here, the default interest rate to which the borrower was exposed under the original note was *higher* than the subsequently modified rate. <u>Id</u>. at *4.

 The California Court of Appeals affirmed a grant of summary judgment for the lender, holding that because "respondent was [the bank's] successor in interest, the exemption applied to it, too." <u>Id</u>. at *3.  The court held that the subsequent change in the interest rate did not change its analysis, reasoning that if a successor in interest to an exempt lender could not agree with the borrower to change the interest rate, the effect would be to "make uneconomical the assignment or sale by banks of their commercial property to a secondary market," a result that would not be "conformable to the public policy exempting banks in the first instance."  Most tellingly, and on all fours with this case, the court reasoned that "the 12.5 percent rate [agreed with the non-exempt

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071  (213) 892-1000

1   assignee] appears permissible on its face because the note allowed up to 17 percent

2   interest if appellant defaulted, as he did here." Id. at *4.

3   　　　The McDonald court's analysis is consistent with that of other California

4   appellate courts, which have held that "to declare a privately negotiated bargain as

5   illegal where the original bargain was not, will only chill the willingness of a

6   nonexempt lender to extend credit" and work flexibly with defaulting borrowers. DCM

7   Partners v. Smith, 228 Cal. App. 3d 729, 737, 278 Cal. Rptr. 778, 782-83 (1991) (noting

8   that absent a rule extending usury exemptions to non-exempt subsequent assignees, "the

9   lender who wishes to accommodate the borrower either must force the borrower into a

10  hardship position to pay . . . or extend the loan and commit usury . . . the imposition of

11  the usury limitations in such cases merely harms the impecunious borrower that the law

12  is intended to protect" (quoting 4 Miller & Starr, Cal. Real Estate (2d ed. 1976) § 10.12,

13  p. 704).

14  　　　The Firm's usury claims fail because the Firm agreed in the first instance to a

15  default interest rate of at least 18% in a loan made by an exempt lender; the Firm

16  concedes that it subsequently defaulted on this loan; and, as Southwest Concrete,

17  McDonald, and DCM Partners confirm, the resulting agreement to waive this default in

18  exchange for replacing a variable interest rate with a 16% fixed interest rate does not

19  amount to usury under well-established principles of California law.

20  **F.　　The Firm's Claim of Unfair Business Practices Should Be Dismissed**

21  　　　The Firm's California unfair business practices claim rests upon a series of *non*

22  *sequiturs* and should, accordingly, be dismissed.  There are four general types of

23  actionable conduct under Cal. Business & Professions Code § 17200 ("Section 17200"):

24  (1) "unlawful" business acts or practices; (2) "unfair" business acts or practices;

25  (3) "fraudulent" business acts or practices; and (4) "false advertising."  See Podolsky v.

26  First Healthcare Corp., 50 Cal. App. 4th 632, 647, 58 Cal. Rptr. 2d 89, 98 (1996).

27  　　　In order to plead a Section 17200 claim based on "unfair" behavior, a party must

28  allege that the actual conduct was "unfair," in addition to pleading that the harm caused

by the unfair conduct outweighs any potential benefit of the conduct.  This is because "the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim-a weighing process quite similar to the one enjoined on us by the law of nuisance."  See Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543, 546 (1980) (citations omitted), overruled on other grounds by Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel., 20 Cal. 4th 163, 187 n.12, 83 Cal. Rptr. 2d 548, 565 n.12 (1999).

Regarding "unlawful" claims brought pursuant to Section 17200, the California Supreme Court has explained that Section 17200 "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Section] 17200."  See Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383, 826 P.2d 730, 734 (1992).  Accordingly, to plead a Section 17200 claim that is premised on "unlawful" activity, a party must allege facts sufficient to show a violation of law because "without supporting facts demonstrating the illegality of a rule or regulation, an allegation that it is in violation of a specific statute is purely conclusionary and insufficient to withstand demurrer."  See People v. McKale, 25 Cal. 3d 626, 635, 602 P.2d 731, 736 (1979); see also Aquino v. Credit Control Servs., 4 F. Supp. 2d 927, 930 (N.D. Cal. 1998) (dismissing with prejudice a claim brought pursuant to Section 17200 where the party failed to "set forth any factual allegations that the defendant's approach violated any state or federal provisions").

Lastly, regarding claims based on "fraudulent" business practices or false advertising, a party must plead that the defendant engaged in a business practice and "members of the public are likely to be deceived."  See Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 214, 673 P.2d 660, 668-71 (1983).

As against LawFinance, the Firm brings a "false advertising" claim, resting on the contention that LawFinance's assignee and the servicer of LawFinance's assignee "intentionally interfere[d] with the Firm's contractual relationships."  Based upon this legal conclusion that LFG National and LFG Servicing committed tortious interference

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

1    with contract (a conclusion that, for the reasons set forth in Section C above, is

2    meritless), the Firm asserts, "upon information and belief," that statements on a

3    LawFinance webpage to the effect that LawFinance does not "offer legal advice,

4    assume control of the case, or interfere in the attorney-client relationship [or] . . . the

5    handling of the case" were false.  Yet, the Firm does not explain how LFG's simple

6    exercise of its rights as a secured lender under the Loan Agreement and the Uniform

7    Commercial Code – an exercise of rights which the Firm agreed in advance would be

8    appropriate and reasonable – renders any of these statements false.  By demanding

9    payment of funds over which it held a security interest, LFG National did not offer any

10   legal advice, assume control of any case, or interfere in any attorney-client relationship

11   or question of case tactics or strategy.  Because the Firm does not allege facts showing

12   that "members of the public are likely to be deceived" by the webpage at issue, the

13   Firm's "false advertising" claim fails as a matter of law.  See Children's Television, 35

14   Cal. 3d at 211-15, 673 P.2d at 668-71.

15           As against LFG National and LFG Servicing, the Firm's unfair business practices

16   claim consists of a simple rehash of the Firm's legally infirm and factually insufficient

17   allegations in support of its implied covenant, tortious interference, and usury claims,

18   complete with the wildly implausible allegation that LFG demanded the payment of the

19   Firm's Simpson and Quixtar fees in satisfaction of the loan in order to ensure that those

20   fees would not be paid in satisfaction of the loan.  Because, for the reasons set forth

21   above, LFG's efforts to enforce its undisputed liens do not ground the Firm's implied

22   covenant and tortious interference claims, and because LFG National did not violate

23   any usury law, these claims must fail.  As stated previously, the Firm did not plead that

24   "members of the public are likely to be deceived" by LFG's behavior, and thus cannot

25   plead a Section 17200 claim based on "fraudulent" behavior.  See id.  The Firm

26   similarly cannot plead a Section 17200 claim based on "unfair" behavior because

27   "whether a business practice is unfair under 17200 requires, at the very least, an

28   examination of its impact on its alleged victim, balanced against the reasons,

1  justifications and motives of the alleged wrongdoer."  <u>Podolsky</u>, 50 Cal. App. 4th at

2  647, 58 Cal. Rptr. 2d at 98 (citation and quotation omitted).  Lastly, the Firm cannot

3  plead a Section 17200 claim based on "unlawful" behavior.  Because the Firm has

4  failed to state a claim for a violation of any other California or Florida law, it will be

5  unable to plead an "unlawful" business practice under Section 17200 as well.

6  / / /

**CHADBOURNE & PARKE LLP**
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071  (213) 892-1000

17

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071 (213) 892-1000

## CONCLUSION

For the reasons stated above, Plaintiff and Counterdefendants respectfully requests that their Motion to Dismiss the Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) be granted, and the Firm's counterclaims be dismissed with prejudice. [3]

July 20, 2011                                          CHADBOURNE & PARKE LLP


                                                      By:  _____/s/ Jay R. Henneberry_____
                                                              Jay R. Henneberry
                                                              Scott S. Balber
                                                              Jonathan Cross

                                                      *Attorneys for Plaintiff and Counterdefendant*
                                                      LFG NATIONAL CAPITAL, LLC
                                                      LAWFINANCE GROUP, INC., and
                                                      LFG SERVICING, LLC

---

[3] While the Firm refers in passing to a request for a temporary restraining order and preliminary relief, see Counterclaims ¶ 72, it has not moved for any such relief. However, even if the Firm properly moves for a temporary restraining order, it is not entitled to such relief. A party seeking injunctive relief must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that an injunction is in the public interest. See Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 982 (9th Cir. 2010) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). For the reasons stated above, the Firm has not stated any claim for which it is entitled to relief, and thus is not likely to succeed on the merits. The Firm has not alleged, and cannot allege that it is likely to suffer irreparable harm or that the balance of equities tips in the favor of the Firm. Regarding the fourth and final factor, whether the injunction "is in the public interest," the Firm's only allusion to public policy in the Counterclaim concern the deficient allegations regarding violations of California and Florida usury law. The Firm's usury claims are without merit, as is the Firm's contention that Plaintiff has engaged in any activity that would contravene public policy. Accordingly, the Firm has failed to allege that injunctive relief would be in the public interest.